**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**



09/07/2023

| | | |
|---|---|---|
| In re: | § | **CHAPTER 7** |
| | § | |
| **JASON WILLIAM COUTTS** | § | **Case No. 21-40528** |
| xxx-xx-6051 | § | |
| 441 Elwood Court | § | |
| Argyle, TX 76226 | § | |
| | § | |
| Debtor. | § | |
| | § | |
| **HENDRICK HAN, ROYAL OAK** | § | |
| **CAL LLC and ROYAL OAK CAL** | § | |
| **II, LLC,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| vs. | § | **Adv. Proc. No. 21-4092** |
| | § | |
| **JASON WILLIAM COUTTS** | § | |
| | § | |
| **Defendant.** | § | |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW[1]**

Upon trial of the complaint filed by the Plaintiffs, HENDRICK HAN ("Mr. Han"), ROYAL OAK CAL LLC ("Royal Oak"), and ROYAL OAK CAL II, LLC ("Royal Oak II", and together with Mr. Han and Royal Oak, the "Plaintiffs"), seeking a determination of whether a debt allegedly owed by the Debtor-Defendant, Jason William Coutts ("Defendant"), is dischargeable, the Court issues the following findings of fact and conclusions of law.

This proceeding relates to a 2016 real-estate transaction involving a 158-unit condominium complex located at 370 St. Andrews Drive, Pierce Township, Clermont County, Ohio 45245 (the "Property"). Plaintiffs allege that Silver Creek Investments, Inc. ("Silver Creek") and Caltex Management, LLC ("Caltex"), were required to pay the Plaintiffs a debt totaling at least $1,878,363.17 (the "Debt") arising from this transaction

---

[1] These findings of fact and conclusions of law are not designated for publication and shall not considered as precedent, except under the respective doctrines of claim preclusion, issue preclusion, the law of the case or as to other applicable evidentiary doctrines.

and that Debtor is personally responsible for this Debt of Silver Creek and Caltex. Plaintiffs further allege that Debtor may not discharge this Debt in his voluntary Chapter 7 bankruptcy case styled *In re Jason William Coutts*, Case No. 21-40528 (the "Bankruptcy Case") because the Debt is a debt for property obtained from Plaintiffs by "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or insider's financial condition" and is therefore non-dischargeable under Section 523(a)(2)(A) of Title 11 of the United States Code (the "Bankruptcy Code"). Debtor denies he owes the Debt in his personal capacity and denies that the Debt is non-dischargeable under Bankruptcy Code § 523(a)(2)(A).

The Court held a trial on May 1, 2023, at which both Defendant, Jason Coutts, and Plaintiff, Hendrick Han, testified. At the conclusion of trial, the Court took the matter under advisement. These findings dispose of all issues pending before the Court.

## I.    FINDINGS OF FACT

1.    These findings and conclusions constitute the Court's findings of fact and conclusions of law and fact pursuant to Fed. R. Civ. P. 52, made applicable to adversary proceedings by Fed. R. Bankr. P. 7052. Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact.

### A.    Parties and Affiliates

2.    The Plaintiff Mr. Hendrick Han ("Mr. Han") is a natural person and a resident of the State of California with his current address at 55 Vallejo Drive, Millbrae, California, 94030.

3.    The Plaintiff Royal Oak Cal LLC ("Royal Oak") is an Ohio limited liability company formed by Mr. Han on March 28, 2013. Mr. Han is the managing member of Royal Oak. Mr. Han, Melvin Tom ("Melvin"), Benson Tam ("Benson"), and St. Andrews LLC collectively own one hundred percent (100%) of the equity interests of Royal Oak.

4.    The Plaintiff Royal Oak Cal II, LLC ("Royal Oak II") is an Ohio limited liability company formed by Mr. Han on December 9, 2013. Mr. Han is the managing member of Royal Oak II. Mr. Han, Melvin, Benson, and Topstone LLC collectively own one hundred percent (100%) of the equity interests of Royal Oak II.

5.    Ms. Lisa Li ("Ms. Li") is a natural person and a resident of the State of California with her current address at 55 Vallejo Drive, Millbrae, California, 94030. Ms. Li and Mr. Han are married.

6.      The Defendant Jason William Coutts (the "Debtor") is a natural person and a resident of the State of Texas whose address of record in the Bankruptcy Case is 441 Elwood Court, Argyle, TX 76226.

7.      Silver Creek Investments Inc. ("Silver Creek") is a Utah corporation formed by the Debtor on September 21, 2006 to invest in real estate and for other general business purposes. The Debtor owns one hundred percent (100%) of the equity interests in Silver Creek. The Debtor is the sole director, officer, and president of Silver Creek. Silver Creek did not register, and is not registered, with the Secretary of State of the State of Ohio ("Ohio SOS") to do business in the State of Ohio. Silver Creek had ceased doing business by the date of trial.

8.      Caltex Management, LLC ("Caltex") is a Texas limited liability company formed by the Debtor on July 21, 2016. The Debtor owns one hundred percent (100%) of the equity interests in Caltex. The Debtor is the sole managing member of Caltex. Caltex registered with the Ohio SOS to do business in the State of Ohio effective as of August 8, 2016. Caltex had ceased doing business by the date of trial.

9.      The Debtor formed Caltex for the sole purpose of acquiring and owning a 158-unit condominium complex located at 370 St. Andrews Drive, Pierce Township, Clermont County, Ohio, 45245 (the "Property").

10.     At the time of the events at issue, Debtor was married to Ms. Casey Coutts née Jacobson ("Casey"). By the date of trial, Debtor and Casey had been divorced.  Casey and Mr. Blaine Jacobson ("Blaine"), an associate of the Debtor, are cousins. Casey's father is named Mr. Wendell Jacobson ("Wendell"). Wendell is therefore the Debtor's father-in-law. Ms. Melba Jacobson ("Melba") is Wendell's wife and therefore the Debtor's mother-in-law. Wendell is also Blaine's uncle, and Melba is Blaine's aunt. The name of Blaine's father is Mr. Gene Jacobson ("Gene"). Gene is Casey's uncle. Mr. Allen Jacobson ("Allen") is Casey's brother and Wendell's son. Allen is therefore the Debtor's brother-in-law.

11.     On June 22, 2015, the Attorney General of the State of Utah initiated the case styled *The State of Utah Attorney General v. Wendell Jacobson & Allen Jacobson,* Case No. 151907103 (the "Utah Criminal Case") against Wendell and Allen in the Third District Court for Salt Lake County, State of Utah (the "Utah Criminal Court"). Among other things, the Utah Criminal Case involved allegations of securities fraud and sales of unregistered securities against Wendell in connection with his and son's efforts to seek investors in multi-unit apartment complexes. On September 17, 2020, Wendell pleaded no contest to the charge of the attempted sale of an unregistered security in violation of § 61-1-7 of the Utah Code. UTAH CODE ANN. § 61-1-7 (LexisNexis 2020). The Utah Criminal Case was dismissed on December 31, 2020.

**B.**    **Procedural Status**

12.    On April 12, 2021 (the "Petition Date"), the Debtor commenced the voluntary chapter 7 bankruptcy case styled *In re Jason William Coutts,* Case No. 21-40528 (the "Bankruptcy Case") in this Court.

13.    The Plaintiffs filed their *Complaint of Hendrick Han, Royal Oak Cal LLC and Royal Oak Cal II, LLC to Deny Dischargeability of Certain Debts Under 11 U.S.C. § 523(a)(2)* [Doc. No. 1] (the "Complaint") in this Court on July 13, 2021, thereby commencing the above-styled adversary proceeding *Hendrick Han et al. v. Jason William Coutts*, Adv. Proc. No. 21-04092 (the "Lawsuit").

14.    On August 12, 2021, the Debtor filed a *Motion to Dismiss* [Doc. No. 7] (the "Motion to Dismiss") in this Lawsuit. The Court denied the Motion to Dismiss on September 20, 2021 [Doc. No. 9]. The Debtor filed the *Defendant's Original Answer* [Doc. No. 10] (the "Answer") on September 21, 2021.

1.    The Debtor filed his *Motion for Summary Judgment* [Doc. No. 14] ("Summary Judgment Motion") in this Lawsuit on November 5, 2021. The Court denied the Summary Judgment Motion on July 1, 2022 in its *Memorandum of Decision and Order Denying Defendant's Motion for Summary Judgement* [Doc. No. 29] ("Summary Judgment Denial"). *See Han v. Coutts (In re Coutts)*, 2022 Bankr. LEXIS 2284, 2022 WL 3367711 (Bankr. E.D. Tex. 2022)(finding that Plaintiffs have standing to bring this proceeding against Debtor).

**C.**    **The Sale and Purchase of the Property**

15.    The Property is a 158-unit condominium complex located at 370 St. Andrews Drive, Pierce Township, Clermont County, Ohio 45245.

16.    On or about March 28, 2013, Royal Oak entered a *Land Installment Contract*, dated March 28, 2013 (the "Landmark Land Contract") with Royal Oaks Landmark, LLC ("Landmark") with respect to forty (40) of the condominium units located on the Property (the "Landmark Units"). Landmark owned the forty (40) Landmark Units referenced in the Landmark Land Contract as of March 28, 2013. The managing member of Landmark was Mr. Gerald J. Mussari ("Mr. Mussari"). The Landmark Units were subject to a mortgage and indebtedness owed by Landmark to WesBanco Bank, Inc. ("WesBanco").

17.    The forty (40) Landmark Units referenced in the Landmark Land Contract are identified as follows:

312A 312B 312C 312D
314A 314B 314C 314D
316A 316B 316C 316D
318A 318B 318C 318D
320A 320B 320C 320D
322A 322B 322C 322D
328A 328B 328C 328D
330A 330B 330C 330D
332A 332B 332C 332D
334A 334B 334C 334D

18.    According to Section 1 of the Landmark Land Contract, the total purchase price was $1,200,000 ("Landmark Purchase Price"). A total of $200,000 of this Landmark Purchase Price was paid either as an initial deposit shortly before or after the Landmark Land Contract was executed, as a credit for rehabilitating the Landmark Units, or at the closing. The balance of $1,000,000 was financed at an interest rate of 6.10% per annum with monthly installments of $6,661.53 due starting on June 1, 2013. The entire remaining balance was due on the Landmark Land Contract on March 31, 2017. Royal Oak could obtain two (2) additional, one-year extensions by paying Landmark $10,000 per extension.

19.    Under the Landmark Land Contract, Royal Oak acquired the Landmark Units in exchange for Royal Oak's agreement to make installment payments over time of the agreed sale price. The final installment payment was due on the Landmark Land Contract on March 31, 2017. The Landmark Land Contract was recorded in the real property records of Clermont County, Ohio (the "Clermont Property Records") on April 17, 2013 under Recording No. 201300011509.

20.    On or about January 8, 2014, Sun Properties Management, Ltd. ("Sun Properties") executed a *General Warranty Deed*, dated January 8, 2014 ("Sun Properties Deed") transferring ownership of sixty-two (62) additional condominium units located at the Property to Royal Oak II (the "Royal Oak II Units").

21.    The sixty-two (62) Royal Oak II Units transferred by the Sun Properties Deed are identified as follows:

308A, 308B, 308C, 308D, 310A, 310B, 310C, 310D, 324C, 324D, 326A, 326C, 326D, 336A, 336B, 336C, 336D, 338A, 338B, 338C, 338D, 340A, 340B, 340C, 340D, 342A, 342B, 342C, 342D, 344A, 344B, 344C, 344D, 346A, 346B, 346C, 346D, 348A, 348B, 348C, 348D, 350A, 350B, 350C, 350D, 352A, 352B, 352D, 352E, 352F, 354A, 354B, 354C, 354D, 354E, 354F, 356A, 356B, 356C, 356D, 356E, 356F

22.     The Sun Properties Deed was recorded in the Clermont Property Records on January 16, 2014 under Recording No. 201400000938.

23.     Also in January 2014, Mr. Han and Ms. Li together acquired the remaining fifty-six (56) condominium units located at the Property (the "Individual Units"). The deed effecting this transfer was also recorded in the Clermont Property Records.

24.     The fifty-six (56) Individual Units are identified as follows:

358A, 358B, 358C, 358D, 358E, 358F, 360A, 360B, 360C, 360D, 360E, 360F, 362A, 362B, 362C, 362D, 362E, 362F, 326B, 352C, 364A, 364B, 364C, 364D, 364E, 364F, 366A, 366B, 366C, 366D, 366E, 366F, 368A, 368B, 368C, 368D, 368E, 368F, 300A, 300B, 300C, 300D, 302A, 302B, 302C, 302D, 304A, 304B, 304C, 304D, 306A, 306B, 306C, 306D, 324A, 324B

25.     After acquiring the Individual Units, Mr. Han owned or controlled all 158 condominium units on the Property, either individually or through Ms. Li, Royal Oak, and/or Royal Oak II.

26.     In 2015, the Plaintiffs hired Blaine to supervise the management and operation of the Property. Blaine conducted his supervisory duties for the Property through an entity called Luxe Property Management, LLC ("Luxe").

27.     In early 2016, Blaine acted as a real estate broker in connection with Plaintiffs' sale of the Property and communicated with Debtor regarding Silver Creek acquiring the Property. At the same time, Blaine was acting as manager of the Property (through Luxe) on behalf of Plaintiffs. Plaintiffs believed, despite this, that Blaine was acting for Silver Creek and/or Debtor when, on April 4, 2016, Blaine contacted Mr. Han via email to express an interest in acquiring the Property on behalf of Silver Creek.

28.     After approximately a month of negotiations, Silver Creek, Mr. Han, and Royal Oak entered a *Letter of Intent* (the "LOI") on or about May 4, 2016. The LOI contemplated that Silver Creek, or its assignee, would acquire the Property in exchange for a purchase price (the "Purchase Price") of $5,300,000 in total consideration, including a down payment, an assumption of the Landmark Land Contract and other debts encumbering the Property, and payment of "Buyers equity" to the Plaintiffs and Ms. Li. According to the LOI, the Buyers equity represented the difference between the $5,300,000 Purchase Price and the debts assumed at closing. It is unclear whether Debtor, Debtor's attorney, or Blaine drafted all versions of the LOI. Blaine transmitted them to the Plaintiffs.

29.     The LOI estimated the current debt then encumbering the Property (including the obligations owed on the Landmark Land Contract) to be $3,613,000.00. Since the Buyers equity represented the difference between the $5,300,000 Purchase Price and the

current debt at closing, the Buyers equity was estimated to be approximately $1,687,000.00. Silver Creek, or its assignee, promised to pay the "Buyers equity" to the Plaintiffs and Ms. Li no later than eighteen (18) months after closing.

30.    As of April 30, 2016, Silver Creek had only $160,372.72 in its Checking Account No. 0000000000692565638 (the "Silver Creek Account") and did not have sufficient unencumbered assets at that time to pay the Buyers equity.

31.    When Mr. Han and Royal Oak executed the LOI, they reasonably relied on the representation in the LOI that the Buyers equity would be paid within eighteen (18) months after closing of the sale of the Property. Neither Mr. Han nor Royal Oak would have executed the LOI if Mr. Han had known that the Buyers equity would not be repaid at the end of eighteen (18) months.

32.    On July 15, 2016, the Debtor's attorney, Paul W. Jones ("Mr. Jones"), sent a letter via email to James A. Matre ("Mr. Matre"), an attorney for Mr. Mussari, on the erroneous presumption that Mr. Matre represented the Plaintiffs and Ms. Li. Mr. Jones threatened to sue the Plaintiffs and Ms. Li on the Debtor's behalf if they did not perform under the LOI.  Among other statements included in the letter, Mr. Jones represented that Silver Creek "will payoff [sic] your client's equity and remaining debt as provided for in the LOI."

33.    As of July 1, 2016, Silver Creek had only $70,070.67 in its Silver Creek Account and therefore did not have sufficient unencumbered assets to pay the Buyers' equity.

34.    On or about July 25, 2016, the Plaintiffs, Ms. Li, and Silver Creek entered into a *Purchase and Sale Agreement*, dated July 25, 2016 (the "PSA") with respect to the Property under which the Plaintiffs and Ms. Li agreed to sell their interests in the Property to Silver Creek. Landmark was also listed as a seller. The purchaser, or its attorney, prepared the PSA and, through Blaine, delivered it to the Plaintiffs and Ms. Li for execution.

35.    The Purchase Price for the Property set forth in the PSA was $5,300,000. As described in the PSA, the components of the Purchase Price were as follows: (1) a $20,000 earnest-money payment payable when the PSA was executed, (2) a down payment of up to $106,000 (less any deposits and closing costs) at closing to be used to pay off vendors and other creditors holding vendor or materialmen's liens against the Property, (3) an agreement (i) to make the installment payments owed by Royal Oak under the Landmark Land Contract and (ii) to complete those payments by February 28, 2017 so that Silver Creek, or its assignee, could acquire the Landmark Units, (4) an assumption of certain existing secured indebtedness owed by Royal Oak II, Mr. Han, and Ms. Li that encumbered the Royal Oak II Units and the Individual Units, respectively, and (5) seller financing

provided by the Plaintiffs and Ms. Li for the remaining balance of the Purchase Price owed to them (the "Sellers' Equity").

36.    The Royal Oak II Units are set forth in Exhibit A to the PSA and are identified as Parcel 1. The Landmark Units are also set forth in Exhibit A to the PSA and are identified as Parcel 2. Lastly, the Individual Units are also set forth in Exhibit A to the PSA and are identified as Parcels 3, 4, 5, 6, 7, 8, 9, and 10.

37.    Section 1.7 of the PSA states that the Seller's Equity would be memorialized in the form of a promissory note (the "Note"). Section 1.8 of the PSA provides that this Note would be paid within eighteen (18) months after closing (in accordance with the LOI). Section 5.4 of the PSA requires Silver Creek (or its assignee) to deliver the "Purchase Price" at Closing.  Section 5.4 of the PSA did not specifically require Buyer's delivery of the Note but did require delivery of "any additional documents . . . . Seller may reasonably require for the proper consummation of the transaction completed by this Agreement." Section 5.3 of the PSA did not specifically require Seller's delivery of the Note but did require delivery of "Such other documents and instruments . . . as may be reasonably required by Buyer, Escrow Agent, or otherwise in order to effectuate the provisions of this Agreement and the Closing of the transactions contemplated herein . . ."

38.    The Debtor organized Caltex under Texas law on July 21, 2016—four (4) days before the PSA was executed. As of August 31, 2016, Caltex had only $16,504.28 in its Checking Account No. 000000865850999 (the "Caltex Account I").

39.    The sale contemplated in the PSA (the "Transaction") closed on or about August 8, 2016 (the "Closing"). Republic Title of Texas, Inc. ("Republic Title") served as the title company for the Transaction. The Settlement Statement ("Settlement Statement"), dated August 2, 2016, prepared by Republic Title reflects, among other things, the following as credits to the buyer: (i) earnest money deposits by Silver Creek totaling $78,616.00, (ii) Adjustments of $27,384 for security deposits, $1,878,363.17 for a "purchase price holdback", and $16,265.25 for a credit to the buyer for mechanics' lien payoffs, and (iii) loan assumptions of $2,541,805.41 to "Merchants Bank" and $759,831.42 to WesBanco.

40.    Caltex is identified in the Settlement Statement as the buyer. Silver Creek and Caltex did not execute an assignment agreement or other document transferring Silver Creek's rights under the PSA to Caltex prior to the Closing. After the Closing, Silver Creek never executed any such assignment document, although Silver Creek and the Debtor did permit Caltex to be identified as the buyer in the Settlement Statement. The Plaintiffs and Ms. Li agreed to close the Transaction with Caltex rather than Silver Creek.

41.    The "purchase price holdback" of $1,878,363.17 set forth in the Settlement Statement represents the Sellers' Equity referred to in the PSA. Caltex did not provide at

Closing the Note memorializing the Sellers' Equity in the amount of $1,878,363.17. The Plaintiffs and Ms. Li nevertheless closed the Transaction without receiving the Note at Closing. The Debtor and Caltex also closed the Transaction without providing the Note at Closing.  It is unclear to the Court based upon the evidence why the Plaintiffs and Ms. Li agreed to close the Transaction without receiving the Note, why the Plaintiffs and Ms. Li did not prepare a Note to ensure its execution at closing, and whether any discussions about preparation or execution of a Note took place at or prior to Closing.  It is also unclear whether Debtor was intentionally silent regarding the delivery and execution of the Note to the Plaintiffs and Ms. Li to use its absence as future leverage if needed, or instead was possibly ignorant of the mechanics of ensuring its delivery and execution at Closing.  Such ignorance on both parties' part is plausible because Plaintiffs and Defendant did not meet in person at a physical Closing, but both signed documents separately which were provided to the title company handling the Closing.

42.    The deadline for Caltex to pay the Sellers' Equity in the amount of $1,878,363.17 as reflected in the Settlement Statement was within eighteen (18) months of the Closing—i.e., by <u>February 8, 2018</u> (the "<u>Equity Payment Deadline</u>").

43.    On August 1, 2016, Caltex, Royal Oak, Mr. Han, and Ms. Li executed a *Land Installment Contract*, dated August 1, 2016 (the "<u>Caltex Land Contract</u>"). Under the Caltex Land Contract, Caltex agreed, in exchange for acquiring Royal Oak's ownership interest in the Landmark Units, to pay to Royal Oak, Mr. Han, and Ms. Li (or directly to Landmark) the amounts necessary to ensure that the payments due to Landmark under the Landmark Land Contract were timely paid. The Caltex Land Contract was recorded in the Clermont Property Records on August 8, 2016 under Recording No. 201600017388.

44.    On August 2, 2016, Royal Oak II executed a *General Warranty Deed*, dated August 2, 2016 ("<u>Royal Oak II Deed</u>"), transferring the Royal Oak II Units to Caltex. The Royal Oak II Deed was recorded in the Clermont Property Records on August 8, 2016 under Recording No. 201600017386.

45.    On August 2, 2016, Mr. Han and Ms. Li executed a *General Warranty Deed*, dated August 2, 2016 (the "<u>Individual Deed</u>") transferring the Individual Units to Caltex. The Individual Deed was recorded in the Clermont Property Records on August 8, 2016 under Recording No. 201600017387.

46.    On August 2, 2016, the Plaintiffs and Ms. Li executed a *Bill of Sale and Assignment* ("<u>Bill of Sale</u>") under which they transferred to Caltex all fixed and intangible assets and other personal property that the Plaintiffs and Ms. Li owned in connection with the Property.

47.    On August 2, 2016, the Plaintiffs and Ms. Li executed an *Assignment of Lessor's Interest in Leases* ("<u>Lease Assignment</u>") under which they transferred to Caltex

any and all rights that they then held in connection with any leases affecting all or any portion of the Property.

48.     On or about July 30, 2016, the One Royal Oak Condominium Unit Owners' Association Inc. (the "Condo Association") executed two *Releases of Lien* (the "Lien Releases") with respect to certain of the units comprising the Property. The Lien Releases were recorded in the Clermont Property Records on August 8, 2016 under Recording Nos. 201600017384 and 201600017385.

49.     The Plaintiffs justifiably relied on the expectation that Caltex and/or Silver Creek would meet their obligations under the PSA to pay the Sellers' Equity of $1,878,363.17 by the Equity Payment Deadline. The Plaintiffs were injured and damaged when they executed the Caltex Land Contract, the Bill of Sale, and the Lease Assignment, and when they delivered the Royal Oak II Deed and the Individual Deed to Caltex, thereby transferring all their ownership interest and rights in the Property's units to Caltex without receiving the expected payment of the Sellers' Equity. The Plaintiffs also relied on this expectation when Mr. Han caused the Condo Association to execute and file the Lien Releases.  However, Plaintiffs failed to explain satisfactorily why they signed all documents at the Closing on August 8, 2016, including conveyance documents, in the absence of the Note required under the PSA from Caltex and/or Silver Creek in the amount of $1,878,363.17 (as set forth in the Settlement Statement) for the Sellers' Equity, pursuant to Sections 1.7, 1.8 and 5.4 of the PSA.

50.     Neither Caltex, Silver Creek, nor the Debtor ever made any payments to the Plaintiffs and/or Ms. Li for the Sellers' Equity in the amount of $1,878,363.17. No Note was ever executed to memorialize the obligation to pay the Sellers' Equity as contemplated in Section 1.7 of the PSA.

51.     Under PSA §§ 1.7 and 1.8, the Sellers' Equity was to be paid under the terms of the Note no later than eighteen (18) months after Closing.

### D.     Post-Closing Events

52.     On or about October 12, 2016, Caltex entered an *Open-End Mortgage, Security Agreement and Assignment of Rents*, dated October 12, 2016 ("2016 Winberg Mortgage"), in favor of Margaret L. Winberg, Trustee of the Valley Song Home Redevelopment Trust Number 143 for St. Andrews Specialized Lending Trust ("Winberg"), thereby granting a mortgage to Winberg that encumbered the Landmark Units and the Royal Oak II Units. The 2016 Winberg Mortgage was recorded in the Clermont Property Records on October 18, 2016 under Recording No. 201600023942.

53.     Winberg subsequently assigned the 2016 Winberg Mortgage to Fred Ricks & Burg, LLC ("FRB") on November 9, 2020 pursuant to an *Assignment of Mortgage*, dated

November 9, 2020. This assignment was recorded on November 17, 2020 in the Clermont Property Records under Recording No. 202000032524. Four months later, FRB executed a *Release of Mortgage*, dated March 9, 2021 with respect to this 2016 Weinberg Mortgage in favor of Caltex and recorded it in the Clermont Property Records on March 12, 2021 under Recording No. 202100008041. Wendell is the manager of FRB.

54.     Caltex subsequently paid Landmark $10,000 to extend the deadline under the Landmark Land Contract to pay the total amount due on that agreement by one (1) year from March 31, 2017 to March 31, 2018.

55.     On February 14, 2017, Royal Oaks on The Green LLC ("Royal Oaks Green") was organized under Wyoming law as a Wyoming limited liability company. Melba is the managing member of Royal Oaks Green. Royal Oaks Green registered with the Ohio SOS to do business in the State of Ohio effective as of October 19, 2020.

56.     On February 23, 2017, Caltex entered a *Mortgage*, dated February 23, 2017 (the "2017 Munk Mortgage I"), in favor of Mr. Don Munk ("Mr. Munk"), thereby granting a mortgage to Mr. Munk that encumbered the Individual Units. The 2017 Munk Mortgage I was recorded in the Clermont Property Records on February 28, 2017 under Recording No. 201700004552. On November 17, 2020, Mr. Munk's estate recorded a *Satisfaction of Mortgage*, dated November 9, 2020, in the Clermont Property Records under Recording No. 202000032567 with respect to this mortgage.

57.     On February 23, 2017, Caltex entered a *Mortgage*, dated February 23, 2017 ("2017 Munk Mortgage II"), in favor of Mr. Munk, thereby granting a mortgage to Mr. Munk that encumbered the Royal Oak II Units. The 2017 Munk Mortgage II was recorded in the Clermont Property Records on March 2, 2017 under Recording No. 201700004754. On November 17, 2020, Mr. Munk's estate recorded a *Satisfaction of Mortgage*, dated November 9, 2020, under Recording No. 202000032566 with respect to this mortgage.

58.     On November 22, 2017, Caltex executed a *General Warranty Deed* ("Royal Oaks Green Deed I") dated November 22, 2017, in favor of Royal Oaks Green, transferring all its ownership interest in the Individual Units to Royal Oaks Green. The Royal Oaks Green Deed I was recorded in the Clermont Property Records on February 23, 2018 under Recording No. 201800004025.

59.     In addition, on November 22, 2017, Caltex also executed a *General Warranty Deed*, dated November 22, 2017 ("Royal Oaks Green Deed II", and together with Royal Oaks Green Deed I, the "Royal Oaks Green Deeds"), in favor of Royal Oaks Green, transferring all its ownership interest in the Royal Oak II Units to Royal Oaks Green. The Royal Oaks Green Deed II was recorded in the Clermont Property Records on February 23, 2018 under Recording No. 201800004026.

60.    By March 2018, the Debtor had introduced the Plaintiffs to Wendell as an individual who could assist with refinancing the loans that encumbered the Royal Oak II Units and the Individual Units. The Debtor did not, however, inform the Plaintiffs of the pending Utah Criminal Case against Wendell and Allen or mention that Caltex had already executed and recorded the Royal Oaks Deeds transferring ownership of the Royal Oak II Units and the Individual Units to Royal Oaks Green, an entity associated with Melba and Wendell.

### E.    The Ohio Litigation

61.    On or about September 20, 2018, the Plaintiffs and Ms. Li filed a *Verified Complaint* (the "2018 Complaint") in the Common Pleas Court of Clermont County, Ohio (Civil Division) (the "Ohio Court") against Caltex and various other parties, thereby initiating the case styled *Royal Oak Cal, LLC et al. v. Caltex Management, LLC*, Case No. 2018-cvh-01381 (the "2018 Ohio Case") in the Ohio Court. On March 15, 2019, the Ohio Court dismissed the 2018 Ohio Case without prejudice to re-filing.

62.    On February 26, 2021, the Plaintiffs and Ms. Li filed a *Verified Complaint* (the "2021 Complaint") in the Ohio Court against Caltex and Silver Creek, thereby initiating the case styled *Royal Oak Cal, LLC et al. v. Caltex Management LLC*, Case No. 2021-cvh-00178 (the "2021 Ohio Case") in the Ohio Court. On June 28, 2022, the Ohio Court ordered the Plaintiffs and Ms. Li to file an amended complaint to add Landmark as a defendant. The Plaintiffs and Ms. Li timely filed this amended complaint on July 18, 2022.

63.    On October 27, 2022, the Plaintiffs and Ms. Li filed a *Renewed Motion for Summary Judgment* ("Summary Judgment Motion"). Caltex and Silver Creek had a full and fair opportunity to object to the Summary Judgment Motion and to contest its allegations. Caltex and Silver Creek did not contest the Summary Judgment Motion, and the Ohio Court granted it on February 17, 2023 pursuant to a *Decision and Entry* entered on that date (the "2023 Summary Judgment Order"). The 2023 Summary Judgment Order provides, *inter alia*, that Caltex and Silver Creek breached the PSA and are indebted to the Plaintiffs and Ms. Li in the total amount of the Sellers' Equity ($1,878,363.17). The 2023 Summary Judgment Order also provides that Caltex and Silver Creek were unjustly enriched in the amount of the Sellers' Equity ($1,878,363.17). A *Final Judgment Entry* ("2023 Final Judgment") was entered in the 2021 Ohio Case on March 9, 2023 confirming the Summary Judgment Order and resolving all remaining issues in the 2021 Ohio Case.

### F.    Subsequent Developments Regarding the Property

64.    On June 20, 2018, Royal Oaks Green entered an *Open-End Mortgage*, dated June 11, 2018 in favor of MAC Lenders II, LLC ("MAC II"), thereby granting a mortgage to MAC II that encumbered certain of the Individual Units and the Royal Oak II Units.

This mortgage was recorded in the Clermont Property Records on July 11, 2018 under Recording No. 201800015610. MAC II recorded a *Satisfaction of Mortgage*, dated November 10, 2020, with respect to this mortgage in the Clermont Property Records on November 17, 2020 under Recording No. 202000032527.

65.    On July 14, 2020, Royal Oaks Green entered a *Mortgage,* dated July 14, 2020, by Royal Oaks Green in favor of Legion Field Apartments, LLC ("Legion Field"), thereby granting a mortgage to Legion Field that encumbered the Individual Units. This mortgage was recorded on July 15, 2020 in the Clermont Property Records under Recording No. 202000017845. Legion Field recorded a *Satisfaction of Mortgage*, dated October 28, 2020, with respect to this mortgage in the Clermont Property Records on November 17, 2020 under Recording No. 202000032526.

66.    On August 4, 2020, Royal Oaks Green entered a *Mortgage,* dated August 4, 2020, in favor of Legion Field, thereby granting a mortgage to Legion Field that encumbered the Royal Oak II Units. This mortgage was recorded on August 11, 2020 in the Clermont Property Records under Recording No. 202000020842. Legion Field recorded a *Satisfaction of Mortgage*, dated October 28, 2020, with respect to this mortgage on November 17, 2020 in the Clermont Property Records under Recording No. 202000032525.

67.    On November 10, 2020, Royal Oaks Green executed a *General Warranty Deed*, dated November 10, 2020 (the "317 Royal Deed"), in favor of 317 Royal Oaks, LLC ("317 Royal") transferring all its ownership interest in the Royal Oak II Units and the Individual Units to 317 Royal. The 317 Royal Deed was recorded on November 17, 2020 in the Clermont Property Records under Recording No. 202000032522.

68.    Prior to March 2021, Royal Oaks Green acquired—either by sale or foreclosure—a one hundred percent (100%) ownership interest in the Landmark Units. On March 9, 2021, Royal Oaks Green executed an *Open-End Mortgage*, dated March 9, 2021, by Royal Oaks Green in favor of MAC Lenders I, LLC ("MAC I") with respect to the Landmark Units. This mortgage was recorded on March 12, 2021 in the Clermont Property Records under Recording No. 202100008039. In addition, Royal Oaks Green also executed an *Assignment of Rents and Leases*, dated March 9, 2021, in favor of MAC I with respect to the Landmark Units, which assignment was also recorded in the Clermont Property Records on March 12, 2021 under Recording No. 202100008040. This mortgage was subsequently amended pursuant to that *First Amendment to Open-End Mortgage,* dated July 27, 2021, between Royal Oaks Green and MAC I, and recorded in the Clermont Property Records on August 25, 2021 under Recording No. 202100027724. On December 18, 2021, MAC I executed a *Release and Satisfaction of Mortgage*, dated December 17, 2021 with respect to this mortgage and recorded it on December 21, 2021 in the Clermont Property Records under Recording No. 202100041217.

69.    On September 30, 2021, Royal Oaks Green executed a *Limited Warranty Deed*, dated September 30, 2021, in favor Royal MAC LLC ("Royal MAC"), transferring its ownership interests in the Landmark Units to Royal MAC. This deed was recorded on November 8, 2021 in the Clermont Property Records under Recording No. 202100036363.

## II.    CONCLUSIONS OF LAW

### A.    Choice of Law

2.    PSA § 10.4 provides that the PSA should be enforced under the law of the state where the Property is located. (PSA, § 10.4, p. 11). The Property is in Clermont County, Ohio. Therefore, the PSA provides for its enforcement under Ohio law.

3.    Ohio follows the *Restatement (Second) Conflict of Law*s (1971) (the "Restatement") when deciding whether a contractual choice of law is valid and enforceable. *Schulke Radio Prods., Ltd. v. Midwestern Broad. Co.*, 6 Ohio St. 3d 436, 439, 453 N.E.2d 683, 686 (1983); *see also Zounds Hearing Franchising, LLC v. Bower*, 2017 WL 4399487, at *3 (D. Ariz., Sept. 19, 2017). Ohio follows the rule that where a conflict of law issue arises in a case involving a contract, the law of the state where the contract is to be performed governs. *Schulke*, 453 N.E.2d at 685-86.

4.    However, when parties may have chosen a forum other than the place of performance, Ohio courts apply the law of the state chosen by the parties to govern their contractual rights and duties unless one of the following two (2) exceptions applies: "(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice," or "(b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which…would be the state of the applicable law in the absence of an effective choice of law by the parties." *Schulke*, 453 N.E.2d at 686; *see also Bold Home Prods., LLC v. CarbonKlean*, LLC, 2022 WL 1406649, at *3 (S.D. Ohio May 4, 2022).

5.    Neither of these exceptions applies in this Lawsuit. Ohio has a substantial— indeed, *the* most substantial—relationship to the parties, to the Transaction, and to the Property, and no other state has any interest in the Transaction (including in the enforcement of the PSA) greater than Ohio's. In fact, the forum chosen by the Parties in the PSA and the forum that Ohio law would otherwise require as the place of performance are identical in this case: the State of Ohio. Consequently, even if the parties had not chosen Ohio law as their governing law, all the ordinary considerations relevant to choice of law, such as the location of the Property, the place of performance, and the critical events in question, would counsel Ohio as the governing law. *Macurdy v. Sikov & Love, P.A.,* 894 F.2d 818, 820 (6th Cir. 1990) ("[T]he Ohio Supreme Court held that Ohio courts confronted with conflicts of law questions should apply the analysis set forth in the *Restatement*

*(Second) of the Law of Conflicts.*"); *Sky Techs. Partners, LLC v. Midwest Research Inst.*, 125 F. Supp. 2d 286, 297 (S.D. Ohio 2000). This Court will therefore apply Ohio law to this Transaction and the PSA because Ohio law was the parties' express choice, and the State of Ohio was the place of performance of the PSA and the entire Transaction.

6.      Because Ohio law governs the PSA and this Transaction, this Court must examine Ohio law when analyzing the following pertinent issues of applicable state law: (1) whether Caltex, Silver Creek, and/or the Debtor breached the PSA by not paying the Sellers' Equity to the Plaintiffs and Ms. Li by the Equity Payment Deadline, (2) whether Caltex, Silver Creek, and/or the Debtor committed actual fraud in connection with the PSA and the Transaction, (3) whether this Court should pierce the corporate veils of Caltex and Silver Creek, (4) what the appropriate statute of limitations, if any, are with regard to the Plaintiffs' causes of action for breach of contract and actual fraud, as well as the legal remedies available to the Plaintiffs, and (5) what the preclusive effect of the 2023 Summary Judgment Order and the 2023 Final Judgment may be. *See Schulke*, 453 N.E.2d at 684.

### B.    Plaintiffs Have Not Carried Their Burden for the Unpaid Sellers' Equity To Be Found Non-Dischargeable Under Bankruptcy Code § 523(a)(2)(A).

7.      Bankruptcy Code § 523(a)(2)(A) provides that debts for money, property, or services obtained by false pretenses, false representations, or actual fraud are not dischargeable by a debtor in bankruptcy. 11 U.S.C. § 523(a)(2)(A). For this Court to declare any indebtedness owed to the Plaintiffs by Silver Creek, Caltex, or the Debtor to be non-dischargeable under § 523(a)(2)(A), this Court must conclude that the indebtedness resulted from (i) false pretenses, (ii) false representations, or (iii) actual fraud. *E.g., Haugland v. Eisenstein (In re Eisenstein)*, 525 B.R. 428, 436 (Bankr. N.D. Ill. 2015). The Plaintiffs bear the burden of proving the elements of Bankruptcy Code § 523(a)(2)(A) by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 286, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

8.      The Fifth Circuit has construed Bankruptcy Code § 523(a)(2)(A) to provide two (2) paths to non-dischargeability of a debt: (1) false pretenses and false representations and (2) actual fraud. *Bank of La. v. Bercier (In re Bercier)*, 934 F.2d 689, 692 (5th Cir. 1991), *implied overruling on other grounds by Husky Int'l Elecs., Inc. v. Ritz (In re Ritz)*, 578 U.S. 356, 136 S.Ct. 1581, 194 L.Ed.2d 655 (2016); *Res. Ent. Grp. LLC v. Wilhite (In re Wilhite),* Adv. Proc. No. 16-01053-JDW, 2017 WL 835764, at *4 (Bankr. N.D. Miss. Mar. 1, 2017). This Court concludes that the Plaintiffs have not demonstrated by a preponderance of the evidence that the debt allegedly owed to them by the Debtor (as opposed to Silver Creek and/or Caltex) for the unpaid Sellers' Equity is non-dischargeable either under (1) false pretenses and false representations or (2) actual fraud under Ohio law.

(i)     *It is unclear that the debt for the Sellers' Equity resulted from false pretenses and false representations.*

9.      For false pretenses and false representations, an objecting creditor must prove by a preponderance of the evidence that the debtor's representation was: (1) a knowing and fraudulent falsehood, (2) that described past or current facts (not future facts), and (3) that was justifiably relied on by the other party. *Allison v. Roberts (In re Allison)*, 960 F.2d 481, 483 (5th Cir. 1992). False representations that could render a debt non-dischargeable are those that are knowingly and fraudulently made and that materially concern the transaction at issue. *Phelps v. Hunt (In re Hunt)*, 608 B.R. 477, 488 (Bankr. N.D. Tex. 2019). A debtor's failure to fulfill a mere contractual promise does not suffice to render a debt non-dischargeable. *Goldberg Secs. Inc. v. Scarlata (In re Scarlata)*, 979 F.2d 521, 525 (7th Cir. 1992). However, a debtor's failure to fulfill its obligations under a contract can render the creditor's claim non-dischargeable under Bankruptcy Code § 523(a)(2)(A) if the debtor did not intend to perform its obligations under the contract at the time it entered into the agreement. *E.g., AT&T Universal Card Servs. v. Mercer (In re Mercer)*, 246 F.3d 391, 406-08 (5th Cir. 2001); *Hunt*, 608 B.R. at 488. The creditor's reliance on the debtor's false representation need not be objectively reasonable, but merely subjectively justifiable. *Field v. Mans*, 516 U.S. 59, 76, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995).

10.     As a preliminary matter, the Plaintiffs have established that Caltex and Silver Creek breached the PSA by failing to pay the Sellers' Equity to the Plaintiffs by the Equity Payment Deadline. Under Ohio law, the elements of a claim for breach of contract are as follows: (1) the existence of a contract, (2) performance on the plaintiff's part, (3) failure to perform on the defendant's part, and (4) damages that result from the defendant's breach. *Pavlovich v. Nat'l City Bank,* 435 F.3d 560, 565 (6th Cir. 2006) (interpreting Ohio law); *Wauseon Plaza Ltd. P'ship v. Wauseon Hardware Co.,* 156 Ohio App.3d 575, 807 N.E.2d 953, 957 (Ohio Ct. App. 6th Dist. 2004). The Plaintiffs have demonstrated all four (4) elements. First, the Plaintiffs have shown that the PSA (and the Settlement Statement) exist and that Caltex and/or Silver Creek were required under these agreements to pay the Sellers' Equity within eighteen (18) months of the Closing. Second, the Plaintiffs performed all their obligations under these agreements by executing the Caltex Land Contract, the Bill of Sale, and the Lease Assignment and by delivering the Royal Oak II Deed and the Individual Deed to Caltex, thereby transferring all their ownership interest and rights in the Property to Caltex. Third, Caltex and/or Silver Creek did not perform their obligations under the PSA because they did not pay any portion of the Sellers' Equity by the Equity Payment Deadline (or at any time thereafter). Finally, the Plaintiffs incurred damages from Caltex's and Silver Creek's breach of the PSA and the Settlement Statement in an amount at least equal to the unpaid Sellers' Equity ($1,878,363.17). The Plaintiffs have therefore demonstrated that Caltex and Silver Creek breached the PSA under Ohio law. This breach-of-contract cause of action falls within the six-year statute of limitations for breach of a written contract under Ohio law because the 2021 Ohio Case asserting

breach of contract was commenced on February 26, 2021—within six years after the PSA was executed on July 25, 2016 (which represents the earliest possible date that limitations could have begun to run on the breach of contract claim). OHIO REV. CODE ANN. § 2305.06 (West 2023); *see also Shoregate Towers Partners L.L.C. v. Antebi,* 8th Dist. Cuyahoga No. 109817, 2021-Ohio-2688, 2021 WL 3416980, ¶ 103 (8th Dist. 2021).

11.     The limitations period for breach of a written contract under Ohio law is six (6) years. OHIO REV. CODE ANN. § 2305.06 (West 2023) ("[A]n action upon a specialty or an agreement, contract, or promise in writing shall be brought within six years after the cause of action accrued."); see also Shoregate Towers Partners L.L.C. v. Antebi, 8th Dist. Cuyahoga No. 109817, 2021-Ohio-2688, 2021 WL 3416980, ¶ 103 (8th Dist. 2021).

12.     Furthermore, the Plaintiffs have demonstrated that Caltex and Silver Creek breached the PSA because of the 2023 Summary Judgment Order and the 2023 Final Judgment. These decisions have preclusive effect in this Lawsuit and establish that a breach of the PSA by Caltex and Silver Creek occurred. When determining the preclusive effect of the Ohio Court's orders or decisions, this Court must apply the preclusion rules of the State of Ohio. *Caton v. Trudeau (In re Caton),* 157 F.3d 1026, 1028 (5th Cir. 1998), *cert. denied* 526 U.S. 1068 (1999); *Schwager v. Fallas (In re Schwager)*, 121 F.3d 177, 181 (5th Cir. 1997). Under Ohio law, a party must plead and prove the following four (4) elements to successfully assert collateral estoppel: (1) the party against whom estoppel is sought was a party or in privity with a party to the prior action; (2) there was a final judgment on the merits in the previous case after a full and fair opportunity to litigate the issue; (3) the issue must have been admitted or actually tried and decided and must be necessary to the final judgment; and (4) the issue must have been identical to the issue involved in the prior suit. *Ginn v. Stonecreek Dental Care*, 2017-Ohio-4370, 93 N.E.3d 78, ¶ 24 (12th Dist. 2017) (citing *Balboa Ins. Co. v. S.S.D. Distrib. Sys.*, 109 Ohio App.3d 523, 527, 672 N.E.2d 718 (12th Dist. 1996)).

13.     Taken together, the 2023 Summary Judgment Order and the 2023 Final Judgment satisfy all four (4) elements of collateral estoppel under Ohio law for breach of contract as to Caltex and Silver Creek. First, the defendants in the 2021 Ohio Case were Caltex and Silver Creek. Second, the 2023 Summary Judgment Order and the 2023 Final Judgment represent a final judgment on the merits in the 2021 Ohio Case, and both Caltex and Silver Creek had a full and fair opportunity to object to the Summary Judgment Motion and to contest its allegations. They declined this opportunity, and the Ohio Court granted the Summary Judgment Motion disposing of all issues in the 2021 Ohio Case. Third, the issue of breach of contract and unjust enrichment were the only issues raised by the Summary Judgment Motion and the only issues the Ohio Court decided in connection with that motion. Fourth, the breach-of-contract issue raised in this case is identical to the breach-of-contract issue raised in the 2021 Ohio Case. For these reasons, the 2023 Summary Judgment Order and the 2023 Final Judgment have preclusive effect in this

Lawsuit and establish that Caltex and Silver Creek breached the PSA and are liable to Plaintiffs for the total amount of the unpaid Sellers' Equity ($1,878,363.17).

14.    However, it does not necessarily follow from a breach of the PSA by Caltex and Silver Creek that Debtor is individually liable for a non-dischargeable debt because of that breach.  A breach of contract "is not sufficient to make a debt non-dischargeable, even though there is no excuse for the subsequent breach." *Beshears v. McCool* (*In re McCool*), 2019 WL 4781338, at *11 (Bankr. N.D. Tex. Sept. 30, 2019) (citing *Allison*, 960 F.2d at 484).  As one court has summarized,

> It is a matter of well-entrenched jurisprudence that a [party's] failure to perform as promised, standing alone, gives rise to a case for breach of contract, not actionable fraud, misrepresentation or false pretenses under § 523(a)(2)(A). Was it otherwise, almost any debt arising out of a failure to complete a contract would be nondischargeable and that is clearly not the way the statute is written or intended. Instead, to be actionable as fraud, the plaintiff must establish that the debtor entered into the contract with the intent of never complying with its terms.

*Strominger v. Giquinto* (*In re Giquinto*), 388 B.R. 152, 166 (Bankr. E.D. Pa. 2008).  The Court finds the preponderance of evidence does not show that the false pretenses or representations *of Debtor* were the cause of the unpaid debt resulting from breach of the PSA.  The breach resulting in the unpaid Seller's Equity could equally result from false pretenses or representations of Blaine, or even perhaps his extended family.  Finally, Plaintiffs signed all Closing documents and conveyed ownership of the Property without the Note, which was very unwise.  The Court recognizes no Note was delivered to Plaintiffs for signature at Closing, but the PSA is silent on who is responsible for preparing that Note.

15.    For these reasons, the Court does not find the burden carried that the $1,878,363.17 debt for the unpaid Sellers' Equity arising from the breach of the PSA and the Settlement Statement under Ohio law constitutes a debt of Debtor resulting from false pretenses and false representations as contemplated under Bankruptcy Code § 523(a)(2)(A). *E.g., Bercier*, 934 F.2d at 692.

> (ii)    *It is unclear that the debt for the Sellers' Equity was a debt that resulted from actual fraud under Ohio law.*

16.    The Plaintiffs have failed to carry their burden that the unpaid Sellers' Equity owed to the Plaintiffs also constitutes a debt resulting from actual fraud under Ohio law which is non-dischargeable under § 523(a)(2)(A).

17.    To prove actual fraud, Ohio law requires a plaintiff to demonstrate the following: (a) a representation or, where there is a duty to disclose, concealment of a fact, (b) the representation was material to the transaction at hand, (c) the representation was made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) the representation was made with the intent of misleading another into relying upon it, and (e) and the plaintiff justifiably relied upon the representation or concealment, and suffered an injury proximately caused by its reliance. *Burr v. Bd. of Cnty. Commr's*, 491 N.E.2d 1101, 1105 (Ohio 1986); *Cohen v. Lamko, Inc.*, 462 N.E.2d 407, 409 (Ohio 1984). Actual fraud as applied under Bankruptcy Code § 523(a)(2)(A) encompasses forms of fraud, like fraudulent conveyance schemes, that can be effected without an affirmative false representation. *Ritz*, 578 U.S. at 361-62. A debtor need not make an actual, affirmative misrepresentation for the debt to be non-dischargeable under § 523(a)(2)(A). *Id.* at 359.

18.    Ohio law requires that actions based on fraud "be brought within four [4] years after the cause thereof accrued[.]" OHIO REV. CODE ANN. § 2305.09 (West 2023). However, the discovery rule applies in Ohio as well; the four-year limitations period does not commence to run on claims presented in fraud or conversion until the complainants have discovered, or should have discovered, the claimed matters. *Investors REIT One v. Jacobs*, 46 Ohio St.3d 176, 546 N.E.2d 206, 206-07 (1989); *Cundall v. U.S. Bank*, 122 Ohio St.3d 188, 2009-Ohio-2523, 909 N.E.2d 1244, ¶ 24 (Ohio 2009); *Meehan v. Mardis*, 2019-Ohio-4075, 146 N.E.3d 1266, ¶¶ 14-15 (1st Dist. 2019).

19.    Plaintiffs' claims for fraud all fall within the four-year statute of limitations based on fraud under Ohio law. OHIO REV. CODE ANN. § 2305.09 (West 2023). This four-year limitations period commenced on the Equity Payment Deadline (February 8, 2018). *Investors REIT One v. Jacobs*, 46 Ohio St.3d 176, 546 N.E.2d 206, 206-07 (1989), ¶ 2b of the syllabus; *Cundall v. U.S. Bank*, 122 Ohio St.3d 188, 2009-Ohio-2523, 909 N.E.2d 1244, ¶ 24 (Ohio 2009); *Meehan v. Mardis*, 2019-Ohio-4075, 146 N.E.3d 1266, ¶¶ 14-15 (1st Dist. 2019). Since the 2021 Ohio Case was commenced on February 26, 2021, it was filed well before the four-year statute of limitations applicable to the Plaintiffs would have expired on February 8, 2022 (i.e., four years after the Equity Payment Deadline).

20.    The Court does not find, after reviewing the evidence, that Plaintiff has carried its burden as to the elements of actual fraud by a preponderance. For this reason, the Court does not find the burden carried that the $1,878,363.17 debt owed by Caltex and Silver Creek for the Sellers' Equity arising from the breach of the PSA and the Settlement Statement constitutes a debt of Debtor resulting from actual fraud under Bankruptcy Code § 523(a)(2)(A).

### C.   The evidence is insufficient to find that Debtor bears individual liability for the unpaid Sellers' Equity owed to Plaintiffs

21.   Because corporations offer their shareholders limited liability, a plaintiff seeking to impose individual liability on a shareholder must pierce the corporate veil to do so.  *Spring St. Partners–IV, L.P. v. Lam*, 730 F.3d 427, 443 (5th Cir. 2013).

22.   Under Ohio law, "[i]n order to reach the personal assets of the corporation's individual shareholders, the creditor must show that '(1) control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own [i.e., the "alter ego" theory], (2) control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity, and (3) injury or unjust loss resulted to the plaintiff from such control and wrong." *ERB Poultry, Inc. v. CEME, L.L.C.*, 2014-Ohio-4504, 20 N.E.3d 1228, ¶ 17 (2d Dist. 2014) (quoting *Belvedere Condominium Unit Owners' Assn. v. R.E. Roark Cos., Inc.*, 67 Ohio St.3d 274, 289, 617 N.E.2d 1075 (1993). Ohio courts pierce the corporate veil when "it would be unjust to allow the shareholders to hide behind the fiction of the corporate entity." *Id.* The *Belvedere* test for piercing the corporate veil has been applied to both limited liability companies and corporations. *William E. Weaner & Assocs., LLC v. 369 West First, LLC*, 2020-Ohio-48, 2020 WL 118611, ¶ 25 (2d Dist. Montgomery No. 28399, 2020); *see also Denny v. Breawick, LLC*, 2019-Ohio-2066, 137 N.E.3d 578, ¶ 15 (3d Dist. Hancock No. 5-18-12, 2019) (noting that the First, Second, Third, Seventh, Eighth, and Tenth Appellate Districts in Ohio all apply the same piercing the corporate veil analysis to LLCs).

23.   When considering the first element of the Ohio alter ego test from *Roark* requiring a creditor to show "control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own," Ohio courts have considered various factors.  These "include: (1) inadequate capitalization; (2) insolvency at the time of the disputed act; (3) the individual held himself out as personally liable for certain corporate obligations; (4) siphoning of funds or assets of the entity for personal expenditures or use; (5) the entity's inability to pay debts due to high salaries or loans to shareholders; (5) commingling of individual and entity funds; (6) disregard of corporate roles; (7) disregard of corporate formalities; (8) lack of corporate records, especially regarding claimed loans to or from the entity to be pierced; (9) common office space; (10) personnel; and (11) the degree of domination by the person to be held liable, e.g. where the corporation was a mere facade for the operations of the dominant shareholders." *Premier Therapy, LLC v. Childs*, 2016-Ohio-7934, ¶ 84, 75 N.E.3d 692, 716 (Ct. App.)  However, Ohio law states that "[t]he failure of a limited liability company or any of its members to observe any formalities relating to the exercise of the limited liability company's powers or the management of its activities is not a factor to consider in, or a ground for, imposing liability on the members for the debts, obligations, or liability

20

of the limited liability company." Ohio Rev. Code Ann. § 1706.26. Texas law contains a similar provision. *See* Tex. Bus. Orgs. Code § 21.233.

24.     Ohio law further provides that piercing the corporate veil constitutes a doctrine or remedy rather than an independent cause of action. *See, e.g.*, *Graham v. City of Lakewood*, 2018-Ohio-1850, 113 N.E.3d 44, ¶ 62 (8th Dist.) (citing *Geier v. Nat'l GG Indus.*, 11th Dist. Lake No. 98–L–172, 1999 WL 1313640 (Dec. 23, 1999)) ("Piercing the corporate veil or alter ego liability is a remedy, not an independent cause of action."); *Trinity Health Sys. v. MDX Corp.*, 180 Ohio App.3d 815, 2009-Ohio-417, 907 N.E.2d 746, ¶ 26 (7th Dist.) ("'Piercing the corporate veil' is not a cause of action in and of itself, but rather, is a legal rule or doctrine …"); *RCO Int'l Corp. v. Clevenger*, 180 Ohio App.3d 211, 2008-Ohio-6823, 904 N.E.2d 941, ¶ 11 (quoting *Geier*, 1999 WL 1313640) ("Piercing the corporate veil is not a claim, it is a remedy encompassed within a claim. It is a doctrine wherein liability for an underlying tort may be imposed upon a particular individual."). Any effort to assert veil piercing with respect to an underlying cause of action therefore carries the same statute of limitations as that cause of action. *Trinity Health Sys.*, 2009-Ohio-417, ¶ 26; *Peterson v. Teodosio*, 34 Ohio St.2d 161, 172, 297 N.E.2d 113, 120 (1973) ("In Ohio, statutes of limitations attach to causes of action and not to the remedial form in which the action is brought.").

25.     The evidence does not by a preponderance show that Silver Creek had no separate mind, will, or existence of its own separate and apart from the Debtor.[2]

26.     The evidence does not by a preponderance show that Caltex had no separate mind, will, or existence of its own separate and apart from the Debtor.[3]

**D.     Conclusion**

27.     To the extent that any of these conclusions of law constitute findings of fact, the Court expressly adopts them as such.

28.     Plaintiffs have not successfully demonstrated the existence of each element under the false pretenses, false representations, or actual fraud prongs of § 523(a)(2)(A),

---

[2] The Court did not find clear evidence that Debtor routinely used Silver Creek's corporate funds for his own personal expenses. It is true Debtor was Silver Creek's sole shareholder, director, and officer, and no regular corporate minute books or consents to enter the Transaction were admitted. This alone is insufficient, however, to pierce the corporate veil under Ohio law and the *Premier* factors. *Premier Therapy, LLC v. Childs*, 2016-Ohio-7934, ¶ 84, 75 N.E.3d 692, 716 (Ct. App.)

[3] It is similarly true as to Caltex that no regular corporate minute books or consents to enter the Transaction were admitted, nor was a formal assignment to transfer Silver Creek's interest in the PSA to Caltex. As with Silver Creek this is insufficient to pierce the corporate veil under the *Premier* factors. It is, however, evidence of haphazard documentation of a complex transaction. *Id.*

sufficient to render the Seller's Equity Debt in the amount of $1,878,363.17 non-dischargeable under that statute as to Defendant, Jason William Coutts.

29.    Debtor, individually, is not liable under the Plaintiffs' causes of action in this proceeding for the unpaid Sellers' Equity owed to the Plaintiffs in the amount of $1,878,363.17 because the requirements to pierce the corporate veils of Silver Creek and Caltex have not been met.[4]

30.    For these reasons, the relief sought by Plaintiffs must be denied and the debt arising from the unpaid Sellers' Equity under the PSA and the Settlement Statement in the amount of at least $1,878,363.17 is dischargeable as to Debtor.

31.    An appropriate judgment shall be entered consistent with these findings and conclusions.

Signed on 09/07/2023

THE HONORABLE JOSHUA P. SEARCY
UNITED STATES BANKRUPTCY JUDGE

---

[4] Defendant should not consider this outcome as vindication of his sharp treatment of Plaintiffs. Evidence paints a picture that Plaintiffs were probably taken for a ride, but what is unclear is who took them on that ride. Was it Defendant? Did Blaine Jacobson? Could one or more members of Blaine Jacobson's extended family be responsible? In the absence of evidence satisfactorily answering this question by a preponderance, the burden of Plaintiffs has not been carried and their requested relief should be denied.